33 C.C.P.A. (Patents)

## Application of McKENNA.
### Patent Appeal No. 5110.

Court of Customs and Patent Appeals.
March 6, 1946.

Ellis S. Middleton, of New York City (Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all of the claims of appellant's application (claims 1,

8, 9, 10 and 11) for a patent relating to surgical shapes of tanned animal material and process of producing the same, and from the Board of Appeal's decision affirming that of the examiner appeal has here been taken.

Claim 1 is illustrative of the appealed subject matter and reads as follows:

"1. A surgical shape chosen from the group consisting of strings, tapes and tubes, adapted and intended to be embedded in living animal tissue, comprising sterile animal material tanned by exposure to an oxidation product of an aromatic compound in which at least two hydrogen atoms have been replaced by at least two members of the group consisting of oxygen and an oxygen-containing residue where the oxygen is attached directly to a carbon atom, said shape being characterized by its deep red color, and when embedded in living animal tissue, by its delayed absorption and decreased irritation."

The references relied upon were:

Kripke (French), 403,334, October 30, 1909;

Davis, 1,254,031, January 22, 1918;

Rogers, 2,167,251, July 25, 1939.

Appellant's application teaches the method of producing surgical shapes in the form of strings, tapes, tubes, or the like, which are useful for surgical purposes where such sutures or shapes are inserted into living tissue and are not withdrawn but are there absorbed. Appellant's articles are made from animal material, the most common of which is so-called catgut which is derived from the small intestine of sheep, or the articles may also be made from animal tendons.

Appellant strongly emphasizes the utility of his surgical shapes for the reason that, owing to the particular tanning method employed and by sterilization, they are given the quality of being less irritating while serving their purposes and also have the quality of delayed absorption which is often necessary in surgical cases.

The appealed claims were rejected by the examiner upon the prior art, specifically upon the French patent to Kripke in view of the facts presented in the patent to Rogers and the Davis patent.

The important feature of appellant's process in producing the article defined by the appealed claims relates to the manner of its tanning. Appellant's tanning consists of exposure of the article to the "oxidation product of hydroquinone," which he states "imparts to the article the characteristic of having a deep red color when embedded in living animal tissue with the additional qualities of having delayed absorption and decreased irritation."

The French patent to Kripke discloses a process for increasing the resistance of animal tissues and objects made therefrom, such as the gut strings of musical instruments, by treating the gut or material processed with hydroquinone or pyragallol. Both of these materials are within the definition of the materials used by appellant. The French patent says nothing about using the animal tissue so treated as surgical ligatures, but nothing is said that would exclude them from being so used.

Appellant's main argument revolves around the contention, in substance, that animal tissue treated with the Kripke method was not known, until appellant's discovery, to have the quality of producing less irritation and being slower in its absorption qualities than ligatures treated by the chrome-tanning method often employed in tanning animal material. In brief, it would seem that appellant discovered that when such material as Kripke makes is used as sutures it has more of the stated desired qualities than sutures tanned by other methods, such as the chrome-tanning method.

The patent to Rogers relates to the making of surgical ligatures, in forms and in shapes like those in contemplation by appellant, from animal intestines. The patentee states:

"For those surgical conditions which require that the ribbon should resist absorption in the tissues for various periods of time, I have employed successfully ribbon gut made in accordance with the above methods, but which has also been subjected to various degrees of tanning by the usual or well-known chrome-tanning process as applied to animal fibers for the purpose of delaying absorption. By varying the strength of the chemicals used, as well as the duration of the chrome-tanning process, the degree of tanning may be regulated."

Chrome-tanning and quinone-tanning have long been well-known in the art of tanning animal matter.

The patent to Davis relates primarily to the making of surgical sutures or ligatures from animal tendons instead of from sheep intestines, as is usual. However, Davis

176

also stated that his product "may be advantageously used for a great variety of purposes, such as in the stringing of tennis racquets, musical instruments and other articles or devices." One of the main advantages he claimed for his invention was in his suggested use of tendons of animals to take the place of the more expensive sheep intestines.

The board, in affirming the action of the examiner in rejecting all of the appealed claims, had the following to say:

"The French patent discloses chrome-tanning of catgut and the like for use in tennis rackets and other implements, while Davis discloses materials adapted to be embedded in living animal tissue and which also may be used as strings for musical instruments, tennis rackets, and other articles. Applicant states the oxidation of the quinone may take place either before, during, or after contact with the animal material. For instance, according to Example 3, the animal material is immersed in the solution of hydroquinone before substantial oxidation has taken place, followed by oxidation by exposing the moist treated material to the action of air.

"Chrome-tanning and quinone-tanning appear to be analogous processes, at least so far as obtaining the same general advantages with respect to sutures. Applicant, by quinone-tanning, may obtain a suture which has more absorption delay and is less irritating than the chrome-tanned suture of Rogers, but the differences seem to be merely differences in degree and not in kind. Applicant does not appear to obtain any new result or any unobvious result different in character or kind from Rogers. Use of a tanning material analogous to those used in the prior art with differences in result in degree only and not in kind is not deemed to be a patentable step. We consider the examiner to be correct in his rejection of the claims."

It will be noted that the board was of the opinion that what appellant had done had been suggested by the prior art and that his claimed improved results, if as claimed, were matters of degree.

After rejection by the examiner and appeal to the board had been taken the applicant was permitted to amend his claims by the addition of the word "sterile" preceding the words "animal material tanned." As to this sterilization feature, it is clear to us, as it obviously was to the Patent Office tribunals, that this limitation alone would not lend patentability to claims otherwise unallowable since sterilization has long been regarded as a necessary pre-treatment of anything that comes in contact with living tissue, and surely it would not be inventive to suggest that the material upon which appellant started should first be sterilized. Unquestionably Davis would not have suggested the use of his sutures for surgical work unless they had been sterilized.

Appellant emphasizes here the importance of his invention being restricted in the tanning material used to "an oxidation product of an aromatic compound in which at least two hydrogen atoms have been replaced by at least two members of the group consisting of oxygen and an oxygen-containing residue where the oxygen is attached directly to a carbon atom." In other words, oxidation is essential. He states, however, as was pointed out by the Solicitor for the Patent Office, that:

"* * * Again, the animal material may be treated with the unoxidized substance and permitted to oxidize in the air while in a moist condition."

Appellant submitted the affidavit of one Dr. Clock, one purpose of which was to show the improvement appellant made over prior art ligatures by the use of quinone-tanning as distinguished from chrome-tanning with reference to said non-irritating and slow absorbing qualities. The affidavit points out that experiments performed with articles tanned in accordance with appellant's teachings caused a "very light tissue reaction, thus demonstrating that the sutures were bland and non-irritating," while sutures which were chrome-tanned produced "a moderately light reaction, showing that such sutures are relatively irritating to the tissue cells."

The affiant also stated that "the results of these studies emphatically demonstrate that catgut sutures tanned with quinone are superior to, and cause a considerably less degree of tissue reaction than sutures tanned by the usual chrome-tanning process."

The affidavit of Dr. Clock, judging from the above-quoted excerpts therefrom, tends to support the conclusion of the board that whatever improvements appellant obtained in the respects indicated were nothing more or less than those of degree and not differences in kind.

Appellant, in concluding his brief, urges that the French patent to Kripke does not contain a single word about tanning and

that his (Kripke's) treatment is "for toughening or increasing the resistance to mechanical influence."

The French patentee, in applying his material to the animal tissue, speaks of "treating." The appealed claims speak of the material being tanned by exposure to an oxidation product. We see no merit in this contention that Kripke does not disclose tanning, but nevertheless the Solicitor for the Patent Office pointed out that appellant, in response to the final rejection by the examiner, stated:

"We recognize, of course, that it is notoriously old to tan animal material with quinone (see French patent of record), and we recognize that it is notoriously old that such material, when so treated, is of a red color."

We think the board arrived at the right conclusion, and its decision affirming that of the examiner is affirmed.

Affirmed.